United States District Court
District of Connecticut

Marco A. Michalski, pro-se           :     District of Connecticut
   Plaintiff                                   Civil No:
                                     :     3:15-cv-00571-(VAB)
         v
                                     :

1) Correctional Managed Health Care
2) Dr. Andino
3) Nurse Jennien
4) Nurse Steve Swan
5) Nurse Yvonne Measner
6) Nurse Supervisor Mary
7) Dr. Gillick
8) APRN Cindy                        :     October 29, 2015
         Defendants


AMMENDED Complaint

Verified Amended Complaint For
Damages And Injuries Relief; Under
42 U.S.C 1983 &
42 U.S.C 12102


A) Introduction

1) This is a 42 U.S.C 1983 and 42 U.S.C 12102 amended complaint filed by Plaintiff, pro-se. Such act is being brought by a prisoner, making claims, and alleging that the defendants have violated the plaintiffs Constitutional

PAGE 1

rights to recieve medical care. Medical that need be necessary for plaintiff to operate and function. Instead defendants are alleged to have been inadequate in treating plaintiffs impairments and disability as well as provide reasonable accomodations or medical care. Plaintiff seeks injunctive relief and money damages. Plaintiff also seeks injunctive relief and damages pursuant to the Americans with Disabilities Act, and the Rehabilitation Act, to an unsentenced prisoner.

B) JURISDICTION

1) Jurisdiction of this case, and court is invoked pursuant to 28 U.S.C § 1331 in that this case is a civil action arising under the Constitution of the United States.

2) Jurisdiction of the court is invoked pursuant to 28 U.S.C § 1343(2)(3), in that this action seeks to redress the deprivation, under color of the State Law, of rights secured by acts of congress providing for equal rights of persons within the jurisdiction of the United States.

C) EXHAUSTION OF AVAILABLE REMEDIES

1) Plaintiff beyond all doubt has exhausted his administrative remedies before making any attempt to file this complaint to said district court.

PAGE 2

D) <u>Parties</u>

1) Plaintiff Marco A. Michalski, at all times relevant was incarcerated and confined at Corrigan CI, as an unsentenced detainee, located at 986 Norwich-New London Tpke, Uncasville, CT; and as a sentenced inmate at Cheshire CI, located at 900 Highland Ave, Cheshire, CT 06410.

2) Defendant Correctional Managed Health Care (CMHC) is a subsidiary, and sister branched, contract based medical provider, managing the care of correctional facilities in Connecticut Department of Corrections. At all times relevant, under contract with CT DOC provided inadequate care form: Correctional Managed Health Care 263 Farmington Rd Farmington, CT

3) Defendants Andino, Nurse Jennien, Nurse Steve Swan, Nurse Yvonne Measner, Nurse Supervisor Mary, Dr. Gillick, and APRN Cindy, are in fact employees of Correctional Managed Health Care, but stationed at Corrigan CI.

4) Correctional Managed Health Care is being sued in their individual and official capacity.

5) Defendants Andino, Jennien, Swan, Measner, Mary, Gillick, and Cindy are all being sued in their individual capacity.

E.) COUNT ONE: VIOLATION OF DUE PROCESS (14TH AMENDMENT)

1.) April 22, 2013 Plaintiff entered (CRCC) Corrigan Correctional facility.

2.) April 22, 2013 during intake Plaintiff was interviewed by medical personnel.

3.) The medical personnel was employed by Defendant who maintained and operated Correctional Managed Health Care Center in the city of Farmington in the State of Connecticut.

4.) CMHC staff are in charge of providing adequate medical services to the inmates of Connecticut Department of Corrections.

5.) CMHC has a protocol that makes mandatory an inmate medical evaluation of all inmates before clearance to the population.

6.) One or two of CMHC staff are assigned each night to the A/P Room of Corrigan to conduct those evaluations of incoming detainees.

7.) April 22, 2013, Plaintiff was admitted thereto population, as deemed cleared by CMHC medical personnel.

8.) April 22, 2013 Plaintiff engaged in a general assessment conducted by CMHC medical staff.

9) Plaintiff was asked the standard questions at the disposal of medical staff and protocol, authorized and circulated by Correctional Managed Health care amongst it's employees.

10) On said date relevant hereto, April 22, 2013 the defendants functioned as it's servants, agents and or employees trained to act as medical proffessionals with mandatory obligations to transcribe, record and document incoming detainees medical history.

11) On said date relevant hereto, April 22, 2013, plaintiff informed the interviewing CMHC nurse that he suffered severe pain in both hands and joints.

12) On said date, plaintiff informed CMHC nurse that he suffered deformity, discomfort, deterioration and Carpal Tunnel Syndrome in both hands.

13) April 22, 2013 plaintiff informed interviewing nurse that no more than 6 (six) months prior, he had undergone carpal tunnel relief surgery, and was scheduled to recieve surgery on the opposite hand (left).

14) Plaintiff also made clear that he was disable and unable to use his hands to participate in daily activity.

15) CMHC employees had knowledge that plaintiff was disable, suffered a handicap which impaired his ability to write, eat, and use his hands.

16) Aware of plaintiffs disability and inability to have proper use of his hands, defendants did not follow medical referral protocol incoming detainees suffering severe injury.

PAGE 5

17) Plaintiff despite defendants inadequate failures to remedy the need for a physicians evaluation, wrote several requests to medical.

18) Plaintiff wrote requests from April until July seeking evaluation of a physician for his disability.

19) On or about July 2013, plaintiff was seen by Nurse Yvonne Measner.

20) On or about July 2013, plaintiff was summoned to sick call, for the purpose of examination and possible treatment for arthritis and severe carpal tunnel syndrome, with Measners knowledge.

21) On or about August 2013, plaintiff wrote an administrative remedy seeking treatment.

22) On or about October 2013, plaintiff was seen by Nurse Jane Doe, who too had knowledge but failed to adequately treat plaintiff for debilitating pain, arthritis, and carpal tunnel syndrome.

23) Through October 2013 and November 2013 plaintiff wrote medical several more times addressing his debilitating condition.

24) Defendant Nurse Jennien, understanding the knowledge of plaintiffs ailment alleged saw plaintiff on or about November 2013, claiming to place plaintiff on doctors list.

25) On or about January 2014, after several more requests, the plaintiff was seen by nurse Jane Doe, who claimed Plaintiff was never placed on doctors list, and that she would place him on the list.

26) On or about January 2014, plaintiff filed another administrative remedy seeking redress.

27) On or about Febuary 2014, plaintiff as directed, filled out a release of medical information to verify his claims of claimed ailments, injury, and procedure.

28) Defendants, even posessing previous and present knowledge, failed to adequately fax and or mail the appropriate documents to Dr. Kardestuncer (sic) of the Norwich Orthopedic Group.

29) Plaintiff filed another administrative remedy on or about March 2014, alleging continuing failures to provide appropriate and reasonable medical care.

30) Defendant Dr. Andino was examining physician shortly after the filing of administrative remedy on or about April 2014.

31) Defendant Andino knew, or should have known, that after examining plaintiffs hands that plaintiff was in need of serious medical attention.

32) Defendant Andino allegedly filed URC to seek specialist for plaintiff in response to the evaluation of plaintiffs hands.

33) Defendant Andino knew, or should have known, that such debilitating loss of hand mobility was effecting the daily activity and standard of plaintiffs living.

34) Defendant Andino in conjunction with alleged filing of a URC, advised Plaintiff that it is policy of CMHC to deny detainees specialist medical care.

35) Defendant Andino, despite his evaluation committed plaintiff to file and sign another medical release form to Norwich Orthopedic Group.

36) Defendant Andino as well failed to fax, mail, or verify or retrieve the medical data necessary to encourage corrective relief to the plaintiff.

37) Defendant Andino despite this knowledge, and failure to verify or act, contributed to plaintiffs manifested risk, and failed to make alternatives available to plaintiff that would thereby avoid constant pain, unnecessary harm, and further deterioration.

38) On or about March 2014 through July 2014, plaintiff was allegedly placed on the doctors list again with no physical treatment.

39) Defendant Nurse Jennien, again on or about July 2014 met with plaintiff, this time accompanied by APRN Cindy.

40) During such times of July 2014, Corrigan CI is in no way supervised by a lisenced physician or trainee.

41.) Defendants Jennier and Cindy prescribed and distributed to Plaintiff a tampered with brace less all of its support of orthopedic functions to provide healing property.

42.) On or about July 2014, Plaintiff met with Dr. Gillick. Upon his observation diagnosed Plaintiffs condition was lacking treatment and a specialist was needed.

43.) On or about July 2014, Defendant Gillick also through his professional opinion suggested that a supportless brace would not be useful to such a debilitating state.

44.) On or about August 2014, Plaintiff made further administrative remedy complaint, alleging inadequate and insufficient treatment, th at the worsen state of such issues.

45.) Defendant Cindy on or about August 2014 as awell inquired Plaintiffs medical history at Norwich Orthopedic Group, and requested a medical release be signed to retrieve from Dr. Kordestencer (sic) any and all medical records in regards to.

46.) Defendant Cindy, upon recievership of Plaintiff records failed to remedy Plaintiff with alternative to relief, knowing the state of deformaty that plagues Plaintiff.

47.) Plaintiff has notified medical several times in regards to discomfort, pain, and muscle deterioration due to lack of use of hands.

48) On or about January 2015, plaintiff committed to the filing of a grievance, a sought for redress, that was met by a meet between defendant Steve Swan and plaintiff.

49) Defendant Steve Swan, during such times relevant operated as nurse and medical grievance coordinator, who knew or should have known through search of plaintiffs chart, that plaintiff suffered disability and pain requiring further treatment, that was not being offered.

50) Defendant Swan made claims to not being within position to make decisions and that such decisions were that of his boss Nurse Supervisor Mary.

51) Defendant Mary on or about January 2015, was head grievance coordinator and is in charge of final disposition of grievances and such persons standing between remedy and plaintiff seeking such redress of adequate medical care.

52) Defendant Swan on or about January 2015 advised plaintiff of Correctional Managed Health Cares policies, which stand strong in regards to not providing remedy for pre-trial detainees.

53) Thereafter, the plaintiff has been subjected to standards below that of adequate medical care, such being applied by refusal of medical care where appropriate and denial of treatment.

54) As a result of the defendants' deliberate indifferent behaviors and care, the plaintiff is subjected to debilitating discomfort and pain, as well as permanent damage

55) As a further result of the defendants' reckless and deliberate lack of care as aforesaid, the plaintiff endured and will continue to endure great pain, suffering, disfigurement, and prolonged and permanent disability by non-usage of his hands.

56) The plaintiffs injuries were and are caused by defendants reckless actions, causing risk, with no pure benefit other than sufferance, and cruel and unusual treatment; each said defendant through CMHC, through it's staff, agents, servants and or employees in one or more of the following respects violated the Constitutional rights of the plaintiff:

   A) in that it failed to use the care and skill ordinarily used by hospitals in the State of Connecticut,

   B) failed to properly provide adequate treatment and remedy the plaintiffs conditions,

   C) knowing plaintiffs disability, provide a reasonable system of assitance to eccomodate a standard of ordinary life,

   D) make accessible remedy for pre-trial detainees, medical standards sufficient to seek specialist when injury is, or causes sufferance of ordinary life,

57) Defendants failures to treat have caused lasting, permanent effects on plaintiff.

58) On July 20, 2015, the plaintiff, now a sentenced inmate, met with APRN Barbara Lafrance at Walker CI, located at 1153 East St. South Suffield, CT 06080

59) On July 20, 2015, APRN Barbara Lafrance claimed a URC was never filed and that she would file it.

60) On July 28, 2015, plaintiff met with Dr. Jon Doe at Walker CI and was referred to an orthopedic specialist.

61) On August 17, 2015, plaintiff was transferred to Cheshire CI, located at 900 Highland Ave Cheshire, CT 06410

62) On September 5, 2015, plaintiff was informed that the URC was approved and he was waiting to meet with an orthopedic specialist.

63) On September 29, 2015, plaintiff again signed a release form to retrieve medical records from Norwich Orthopedic Group, Dr. Kardestuncer.

64) On October 21, 2015 plaintiff was transported to UCONN for a meeting with a specialist.

65) On October 21, 2015 at UCONN, the plaintiff underwent extensive nerve testing.

66) On October 21, 2015 at UCONN, the specialist informed plaintiff that as well as severe median nerve damage (carpal tunnel), he also suffered severe damage to the Ulnar nerve, and that the extensive deterioration was in fact due to the damage to the Ulnar nerve as well as the median nerve.

67) On October 21, 2015, the specialist also informed the plaintiff that although the nerve can be corrected with the proper surgical procedures, the disfigurement and deterioration of muscle mass is permanent.

F) <u>COUNT TWO: FAILURE TO ACT</u>

Paragraphs 1-67 of Count one are made paragraphs 1-67 of count two

68) Defendants inability, recklessness, as well as denial of treatment breached the duty of the defendant to uphold the Standards of providing medical treatment.

69) Defendants first hand knowledge that plaintiff was stricken with a debilitating ailment and refusal to provide remedy for such injury induced the cognizable connection that the defendants failed to act.

G) <u>COUNT THREE - DENIAL OF MEDICAL CARE</u>

Paragraphs 1-67 of count one are made paragraphs 1-67 of count three

68) Defendants failure to provide medical services after intake evaluation, and knowledge that plaintiff was unable to use his hands due to injury, surgery, and obvious deformity arranged direct denial of medical care.

69) After several sick call meetings and doctor appointments, the defendants should have known that plaintiffs inability to use his hands and serious deterioration of muscle mass that the care plaintiff was recieving was inadequate.

70) Despite knowledge of the manifest risk of waiting for a specialist, defendants failed to make alternatives available to the plaintiff, or any other procedure thereby avoiding unnecessary harms or injuries.

H) **PRAYER FOR RELIEF**

1) Injunctive relief in compliance with the Disabilities Act and proper surgical procedures to correct the damage done to the Ulnar nerve and Median nerve (carpal tunnel), as well as any physical therapy needed post-procedures.

2) Compensatory damages of $1,000,000.00

3) Punitive damages of $1,000,000.00

4) Any and all attorney, court, filing fees and cost of incarceration.

5) A request for jury by demand.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*Marco A. Michalski*

Marco A. Michalski #355491
Cheshire C.I.
900 Highland Ave.
Cheshire, CT 06410